**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-00279-WYD-KLM

SEIFULLAH CHAPMAN,

Plaintiff,

v.

FEDERAL BUREAU OF PRISONS, *et al.*,

Defendants.

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

Plaintiff Seifullah Chapman, through undersigned counsel, responds to Defendants'

Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 54).

**INTRODUCTION**

Mr. Chapman has been incarcerated in solitary confinement at the U.S. Penitentiary –

Administrative Maximum prison ("ADX") in Florence, Colorado, since December 2010.  Before

he was incarcerated, Mr. Chapman was diagnosed with an especially severe form of Type 1

diabetes, which requires consistent daily care in order to control his blood sugar.  Defendants are

solely responsible for Mr. Chapman's medical care at ADX, as he relies on them to deliver his

food and insulin and to permit him to leave his cell to exercise.  Defendants have consistently

provided inadequate medical care for Mr. Chapman's diabetes.  For years, among other things,

they refused to provide him insulin with his lunch, and they almost never delivered his morning

and evening insulin within 45 minutes of his breakfast and dinner, or even delivered his food and

1

insulin at consistent times, despite their own policies and procedures' indications that meal and insulin coordination are integral to blood sugar control.[1]  They likewise refused to provide Mr. Chapman with sufficient medical supplies to test his blood sugar at critical times of the day, and they refused – and continue to refuse – to allow him to count the carbohydrates in his food and adjust his insulin dose to correspond with his food intake.  As a result of Defendants' inadequate medical care, Mr. Chapman has suffered severe and frequent episodes of low and high blood sugar, causing not only intense pain, but also loss of consciousness and diabetic neuropathy.  In addition, Defendants' inadequate medical care puts him at substantial risk of serious harm, as failure to properly treat his diabetes puts him at risk of loss of consciousness, diabetic ketoacidosis, kidney failure, blindness, stroke, heart failure, coma, and even death.

In addition to this woefully inadequate medical treatment, Defendants have also excluded Mr. Chapman from programs and activities for which he is otherwise qualified – including medical, food, and recreational services – on the basis of his diabetes.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure allow a defendant to file a motion to dismiss for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  When a defendant files a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true "all well-pleaded factual allegations in a complaint and view these allegations in the light most

---

[1] As a result of Plaintiff's Motion for Temporary Restraining Order (Doc. 25), Defendants have agreed to provide Mr. Chapman insulin with his lunch and to deliver his food and insulin simultaneously. Doc. 48-1.  Defendants have taken the position, however, that they "do not concede that Plaintiff has made a legally sufficient showing of entitlement to relief under the relevant provisions of the Prison Litigation Reform Act."  *Id.*  Given that Defendants have moved to dismiss all of Mr. Chapman's claims, there is no guarantee that Defendants will continue to provide this care to Mr. Chapman.

favorable to the plaintiff." *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir.

2011).  A complaint will survive a 12(b)(6) motion to dismiss if it contains "enough facts to state

a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see

also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The allegations must be enough that, if

assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins

v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).  "Technical fact pleading is not required,

but the complaint must still provide enough factual allegations for a court to infer potential

victory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2009).

## ARGUMENT

Mr. Chapman has asserted two claims against the Defendants: a violation of the Eighth

Amendment, and a violation of the Rehabilitation Act.  With respect to his Eighth Amendment

claim, Mr. Chapman has sued various Defendants in their individual capacities, their official

capacities, or both.  Mr. Chapman's Rehabilitation Act claim is asserted against all Defendants.

Because no individual capacity Defendant is entitled to qualified immunity with respect to Mr.

Chapman's Eighth Amendment claim, and because he has sufficiently alleged official capacity

violations of the Eighth Amendment and a violation of the Rehabilitation Act, Defendants'

Motion should be denied.

### I.      No Defendant is Entitled to Qualified Immunity.

When a government official is sued in his individual capacity for an alleged

constitutional violation, the defense of qualified immunity may be available to him.  *Harlow v.

Fitzgerald*, 457 U.S. 800, 807 (19820.  To overcome an assertion of qualified immunity, a

plaintiff must establish that the defendant committed a constitutional violation, and that the law

prohibiting the defendant's conduct was clearly established at the time the conduct occurred. *DeSpain v. Uphoff*, 264 F.3d 965, 970 (10th Cir. 2001).  Because Defendants Santini, Osagie, and Camacho[2] each violated clearly established law, none of them is entitled to qualified immunity, and their Motion to Dismiss should be denied.

### A.  Mr. Chapman Has Alleged a Constitutional Violation.

To state a claim for relief pursuant to the Eighth Amendment, a Plaintiff must allege a deprivation that is "objectively, sufficiently serious," and that the defendant(s) had a "sufficiently capable state of mind," that is, that they acted with "deliberate indifference to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted).  Mr. Chapman's allegations are sufficient to meet both prongs of the Eighth Amendment test for Defendants Santini, Osagie, and Camacho.

### 1.  Mr. Chapman Has Alleged a Sufficiently Serious Medical Need.

It is unclear whether Defendants contend that Mr. Chapman's allegations are insufficient to satisfy the objective prong of the Eighth Amendment test.  "A medical need is sufficiently serious" to satisfy the objective prong "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (internal quotation marks omitted).  Courts in this district have held that diabetes is a sufficiently serious medical need.  *See*, *e.g.*, *Jones v. Mozer*, No. 11-cv-02189, 2012 WL 3778337, at *4 (D. Colo. Mar. 28, 2012) (citing *Lemay v. Winchester*, 382 F. App'x 698, 703 (10th Cir. 2010)).

---

[2] Defendant Cordova is entitled to immunity, and Mr. Chapman therefore voluntarily dismisses his claims against Defendant Cordova.

Furthermore, Mr. Chapman has sufficiently alleged that his particular form of diabetes is sufficiently serious that a lay person would understand that he needs medical treatment. *See*, *e.g.*, Am. Compl. ¶¶ 86-97 (describing severe symptoms of Mr. Chapman's frequent episodes of low blood sugar); *id.* ¶¶ 104-110 (describing severe symptoms of Mr. Chapman's frequent episodes of low blood sugar). Thus, Mr. Chapman has alleged a sufficiently serious medical condition to satisfy the objective prong of the Eighth Amendment test.[3]

### 2. Mr. Chapman Has Alleged that Defendants Acted with Deliberate Indifference.

The second prong of the Eighth Amendment test requires a plaintiff to show that the "defendant(s) knew he faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'" *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Farmer*, 511 U.S. at 847). That is, "the [defendant] must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 837. "Unlike the objective component, the symptoms displayed by the prisoner are relevant to the subjective component of deliberate indifference." *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009). "An inmate 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act *despite his knowledge of a substantial*

---

[3] A plaintiff may also satisfy the objective prong of the Eighth Amendment test by alleging a substantial risk of serious harm. *Farmer*, 511 U.S. at 828. Mr. Chapman has sufficiently alleged that Defendants' conduct has put him at substantial risk of serious harm, including putting him at substantial risk of loss of consciousness, diabetic ketoacidosis, kidney failure, blindness, stroke, heart failure, coma, decreased blood flow, ulcers, chronic infections, and death. *See*, *e.g.*, Am. Compl. ¶¶ 1, 13, 47, 58, 65, 76, 84.

*risk* of serious harm.'"  *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 842) (emphasis in original).  "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  *Farmer*, 511 U.S. at 842.

Mr. Chapman has sufficiently alleged that Defendants Santini, Osagie, and Camacho knew of and disregarded a substantial risk of serious harm to Mr. Chapman, satisfying the objective prong of the Eighth Amendment test.

### a.  Mr. Chapman Has Alleged that Defendant Santini Acted with Deliberate Indifference.

Mr. Chapman has alleged that Defendant Santini knew of and disregarded a substantial risk of serious harm to Mr. Chapman's health.  Mr. Chapman's allegations against Defendant Santini include that he reduced the number of times Mr. Chapman could check his blood sugar throughout the day (Am. Compl. ¶ 40); that he provides Mr. Chapman with an insufficient number of Chronic Care appointments, and that, when those appointments do happen, Defendant Santini provides no actual treatment for Mr. Chapman's diabetes (*id.* ¶¶ 41-44); and that he has denied Mr. Chapman the ability to control his blood sugar (*id.* ¶ 81).

Mr. Chapman has also alleged that Defendant Santini has known since Mr. Chapman's arrival that Mr. Chapman has an especially severe form of diabetes (*id.* ¶ 108[4]); that Mr. Chapman has discussed his need for specialized care for his diabetes with Defendant Santini (*id.* ¶ 109); that Defendant Santini knew (or should have known because it was obvious) that BOP

---

[4] The Amended Complaint inadvertently contains two sets of paragraphs 108-118.  The citations in this paragraph to those allegations refer to the allegations that appear on pages 23-24.

policies and procedures, consistent with community standards of care,[5] indicate that the goal of diabetes management is blood sugar control (*id.* ¶ 113); that Defendant Santini knew (or should have known because it was obvious) that he was putting Mr. Chapman at substantial risk of serious harm by denying him access to the proper medication (*id.* ¶ 115); that Defendant Santini knew (or should have known because it was obvious) that Mr. Chapman was being provided insufficient blood sugar testing supplies and Chronic Care appointments, putting him at substantial risk of serious harm (*id.* ¶¶ 131-134; 138-139); that Defendant Santini knew (or should have known because it was obvious) that Mr. Chapman was not being permitted sufficient exercise (*id.* ¶¶ 153-155); and that despite his knowledge of all of the risks to Mr. Chapman's health – or the obviousness of those risks – Defendant Santini failed to assist Mr. Chapman in controlling his blood sugar by providing him with sufficient medication, supplies, Chronic Care appointments, and exercise (*id.* ¶ 159).

Furthermore, Mr. Chapman has alleged that Defendant Santini is aware of his severe and frequent episodes of dangerously low blood sugar and dangerously high blood sugar – and the serious symptoms and risks associated with those episodes – and that Defendant Santini has taken no action to abate those symptoms and risks (*id.* ¶¶ 168-183). These allegations are sufficient to state a claim that Defendant Santini knew of and disregarded a substantial risk of serious harm to Mr. Chapman.

---

[5] Defendants contend that Mr. Chapman points only to "community standards of care" to establish their knowledge. Defs.' Mot. Dismiss 11-12. In fact, Mr. Chapman has alleged that *Defendants' own policies*, consistent with community standards of care, put Defendants on notice of the risk of harm to Mr. Chapman. *See*, *e.g.*, Am. Compl. ¶¶ 113-114; 116; 121. The prison's own policies – as well as community standards of care – are at least circumstantial evidence that prison officials "knew of a substantial risk of serious harm." *Mata*, 427 F.3d at 757.

### b. Mr. Chapman Has Alleged that Defendant Osagie Acted with Deliberate Indifference.

Mr. Chapman has likewise sufficiently alleged that Defendant Osagie knew of and disregarded a substantial risk of serious harm to Mr. Chapman's health. According to Mr. Chapman's allegations, Defendant Osagie made a change to Mr. Chapman's insulin prescription that caused Mr. Chapman to be hospitalized in the ADX infirmary, and failed to rectify the problem for approximately 18 months (Am. Compl. ¶ 21); Defendant Osagie has, on multiple occasions, arrived at Mr. Chapman's cell with the wrong form or dosage of insulin (*id.* ¶¶ 22-23); Defendant Osagie has administered Mr. Chapman's insulin improperly and failed to properly draw the insulin within the medically appropriate timeframe (*id.* ¶¶ 24-28); Defendant Osagie has failed to provide Mr. Chapman with the appropriate type and amount of medical supplies for checking and controlling his blood sugar (*id.* ¶¶ 29-40); Defendant Osagie has refused to coordinate Mr. Chapman's insulin delivery with his meals (*id.* ¶¶ 53-58); and he has denied Mr. Chapman the ability to control his blood sugar (*id.* ¶ 80).

Mr. Chapman has also alleged that Defendant Osagie has known since Mr. Chapman's arrival that Mr. Chapman has an especially severe form of diabetes (*id.* ¶ 108[6]); that Mr. Chapman has discussed his need for specialized care for his diabetes with Defendant Osagie (*id.* ¶ 109); that Defendant Osagie knew (or should have known because it was obvious) that BOP

---

[6] The Amended Complaint inadvertently contains two sets of paragraphs 108-118.  The citations in this paragraph to those allegations refer to the allegations that appear on pages 23-24.

policies and procedures, consistent with community standards of care, indicate that the goal of diabetes management is blood sugar control (*id.* ¶ 113); that Defendant Osagie knew (or should have known because it was obvious) that he was putting Mr. Chapman at substantial risk of serious harm by denying him access to the proper medication (*id.* ¶ 115); that Defendant Osagie knew (or should have known because it was obvious) that he was administering the wrong dosage or form of insulin, or that he was not drawing the insulin within a medically appropriate timeframe, and that doing so put Mr. Chapman at a substantial risk of serious harm (*id.* ¶¶ 116-121; 124); that Defendant Osagie knew (or should have known because it was obvious) that Mr. Chapman was being provided insufficient medical supplies and Chronic Care appointments, putting him at substantial risk of serious harm (*id.* ¶¶ 125-134; 138-139); that Defendant Osagie knew (or should have known because it was obvious) that his refusal to allow Mr. Chapman to coordinate his insulin dosage and timing to his meals put Mr. Chapman at a substantial risk of serious harm (*id.* ¶¶ 143-149); and that despite his knowledge of all of the risks to Mr. Chapman's health – or the obviousness of those risks –  Defendant Osagie failed to assist Mr. Chapman in controlling his blood sugar by providing him with sufficient medication, supplies, Chronic Care appointments, and exercise (*id.* ¶ 159).

Furthermore, Mr. Chapman has alleged that Defendant Osagie is aware of his severe and frequent episodes of dangerously low blood sugar and dangerously high blood sugar – and the serious symptoms and risks associated with those episodes – and that he has taken no action to abate those symptoms and risks (*id.* ¶¶ 168-183).  These allegations sufficiently state a claim that Defendant Osagie knew of and disregarded a substantial risk of serious harm to Mr. Chapman.

### c.   Mr. Chapman Has Alleged that Defendant Camacho Acted with Deliberate Indifference.

Finally, Mr. Chapman has sufficiently alleged that Defendant Camacho knew of and disregarded a substantial risk of serious harm to Mr. Chapman's health. According to Mr. Chapman's allegations, Defendant Camacho has, on multiple occasions, arrived at Mr. Chapman's cell with the wrong form or dosage of insulin (*id.* ¶¶ 22-23); that Defendant Camacho has administered Mr. Chapman's insulin improperly and failed to properly draw the insulin within the medically appropriate timeframe (*id.* ¶¶ 24-26); that Defendant Camacho has improperly depleted Mr. Chapman's medical supplies for checking and controlling his blood sugar and failed to replace them (*id.* ¶¶ 32-33); that Defendant Camacho has refused to coordinate Mr. Chapman's insulin delivery with his meals (*id.* ¶¶ 53-58); that he has delivered Mr. Chapman's insulin several hours late on multiple occasions (*id.* ¶¶ 74-75); and that he has denied Mr. Chapman the ability to control his blood sugar (*id.* ¶ 82).

Mr. Chapman has also alleged that Defendant Camacho has known since Mr. Chapman's arrival that Mr. Chapman has an especially severe form of diabetes (*id.* ¶ 108[7]); that Mr. Chapman has discussed his need for specialized care for his diabetes with Defendant Camacho (*id.* ¶ 109); that Defendant Camacho knew (or should have known because it was obvious) that BOP policies and procedures, consistent with community standards of care, indicate that the goal of diabetes management is blood sugar control (*id.* ¶ 113); that Defendant Camacho knew (or should have known because it was obvious) that he was putting Mr. Chapman at substantial risk

---

[7] The Amended Complaint inadvertently contains two sets of paragraphs 108-118.  The citations in this paragraph to those allegations refer to the allegations that appear on pages 23-24 of the Amended Complaint.

of serious harm by denying him access to the proper medication (*id.* ¶ 115); that Defendant Osagie knew (or should have known because it was obvious) that he was administering the wrong dosage or form of insulin, or that he was not drawing the insulin within a medically appropriate timeframe, and that doing so put Mr. Chapman at a substantial risk of serious harm (*id.* ¶¶ 116-119; 121; 124); that Defendant Camacho knew (or should have known because it was obvious) that Mr. Chapman was being provided insufficient medical supplies – in part because Defendant Camacho refused to refill Mr. Chapman's supplies because it is not his "job" to do so – and Chronic Care appointments, putting him at substantial risk of serious harm (*id.* ¶¶ 125-134; 138-139); that Defendant Camacho knew (or should have known because it was obvious) that his refusal to allow Mr. Chapman to coordinate his insulin dosage and timing to his meals put Mr. Chapman at a substantial risk of serious harm (*id.* ¶¶ 148-149); and that despite his knowledge of all of the risks to Mr. Chapman's health – or the obviousness of those risks –  Defendant Camacho failed to assist Mr. Chapman in controlling his blood sugar by providing him with sufficient medication, supplies, Chronic Care appointments, and exercise (*id.* ¶ 159).

Furthermore, Mr. Chapman has alleged that Defendant Camacho is aware of his severe and frequent episodes of dangerously low blood sugar and dangerously high blood sugar – and the serious symptoms and risks associated with those episodes – and that Defendant Camacho has taken no action to abate those symptoms and risks (*id.* ¶¶ 168-183).  These allegations are sufficient to state a claim that Defendant Camacho knew of and disregarded a substantial risk of serious harm to Mr. Chapman.

**B.  The Law Prohibiting Defendants' Conduct was Clearly Established.**

The Supreme Court has long made clear that inmates have a constitutional right to medical care:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.  In the worst cases, such a failure may actually produce physical torture or a lingering death, the evils of most immediate concern to the drafters of the [Eighth] Amendment.  In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose.  The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common law view that it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.

*Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976) (internal quotation marks and citations omitted).

More specifically, within the context of prisoners with diabetes, the Tenth Circuit has held that an inmate who alleged that "he was denied insulin by a doctor even though it had been earlier prescribed for him by another prison doctor;" that "the denial lasted over a year;" "that certain medically-recommended procedures were not performed; that he was denied proper diagnosis and treatment because of the lack of a primary-care physician employed at the prison; that special diets prescribed for him were not provided; that prescribed medication was confiscated by prison officials; and that he was not treated for elevated blood sugar (caused by the diabetes)" sufficiently stated an Eighth Amendment claim.  *Hunt v. Uphoff*, 199 F.3d 1220, 1223-24 (10th Cir. 1999).  Mr. Chapman's allegations are sufficiently similar to the plaintiff's allegations in *Hunt* that a reasonable officer would have known that the failure to provide Mr. Chapman with the proper amounts and types of insulin (Am. Compl. ¶¶ 116-121; 124); the failure to coordinate his food with his insulin (*id.* ¶¶ 143-149); the delivery of his insulin several hours late due to staff shortages (*id.* ¶¶ 74-75); the improper modification of his insulin

prescription for over 18 months (*id*. ¶ 21); and the failure to provide any treatment for his severe and frequent episodes of high and low blood sugar (*id*. ¶¶ 168-183) violated the Constitution. Contrary to Defendants' assertion, as the court held in *Hunt*, these allegations do not "reflect a mere disagreement with his medical treatment." *Hunt*, 199 F.3d at 1224 (internal quotation marks omitted). "Nor does the fact that he has seen numerous doctors necessarily mean that he received treatment for serious medical needs, i.e. that treatment was prescribed at all or that prescribed treatment was provided." *Id*. The law prohibiting Defendants' conduct was clearly established at least as far back as 1999. *Id*. at 1223-24.

Because Mr. Chapman has sufficiently alleged that Defendants Santini, Osagie, and Camacho violated the Eighth Amendment, and because the law prohibiting their conduct was clearly established at the time, they are not entitled to qualified immunity. As a result, Mr. Chapman's Eighth Amendment claims against them in their individual capacities should not be dismissed, and Defendants' Motion should be denied.

## II.     The Official Capacity Eighth Amendment Claim Should Not Be Dismissed.

Defendants contend that Mr. Chapman's Eighth Amendment claim against the BOP should be dismissed because, according to Defendants, Mr. Chapman has not stated a claim against Defendant Oliver in his official capacity. As an initial matter, Mr. Chapman's official capacity claim (i.e., his claim against the BOP) has been asserted against *all Defendants* in their official capacities. Am. Compl., 1 (noting that all Defendants are sued in their official capacities); *id.* at 38 (noting that Mr. Chapman's Eighth Amendment claim is brought against all Defendants); *id.* at 42 (requesting that "an injunction be entered against *all Defendants* in their official capacities" (emphasis added)). Defendants have provided no basis at all for dismissing

the official capacity claims against Defendants Santini, Osagie, and Camacho, and thus those claims should not be dismissed.  Furthermore, Defendants argument in favor of dismissing the official capacity Eighth Amendment claim against Defendant Oliver is erroneous, and Mr. Chapman's official capacity Eighth Amendment claim should not be dismissed.

### A.  Sovereign Immunity Does Not Bar the Claim Against Defendant Oliver.

Defendants recognize that Defendant Oliver is sued only in his official capacity, but go on to say that "[s]overeign immunity bars claims against Defendant Oliver pursuant to *Bivens*." Defs. Mot. Dismiss 16.  In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court held "that plaintiffs may sue federal officials *in their official capacities for damages* for Fourth Amendment violations, even in the absence of an express statutory cause of action analogous to 42 U.S.C. § 1983."  *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005) (emphasis added).  A claim for injunctive relief against a federal agent in his official capacity is not a *Bivens* claim.  *See id.*  Congress has waived the federal government's sovereign immunity with respect to claims "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority."  5 U.S.C. § 702.[8] Because Mr. Chapman has sued Defendant Oliver only for injunctive relief in his official capacity, sovereign immunity does not bar Mr. Chapman's claims against Defendant Oliver, and Defendants' Motion should be denied to the extent that it seeks to dismiss those claims.

---

[8] While this waiver of sovereign immunity appears within the Administrative Procedures Act, "the waiver is not limited to suits under the Administrative Procedures Act."  *Simmat*, 413 F.3d at 1233.

### B.  Mr. Chapman has Stated an Official Capacity Eighth Amendment Claim.

Defendants' argument for dismissing Mr. Chapman's Eighth Amendment claim against

Defendant Oliver for failure to state a claim merely sets up and knocks down a straw man.  The

three-part test for supervisory liability that Defendants articulate and apply, Defs.' Mot. Dismiss

16-18, does not govern Mr. Chapman's official capacity claim against Defendant Oliver.  *See*

*Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (noting that the three-part test articulated

by Defendants applies to *Bivens* individual capacity claims); *Dodds v. Richardson*, 614 F.3d

1185, 1199 (10th Cir. 2010) (reciting Defendants' three-part test in the context of a qualified

immunity analysis).  Because Mr. Chapman has not sued Defendant Oliver in his official

capacity under a theory of supervisory liability, Defendants' analysis is irrelevant.  Instead, to

state an Eighth Amendment claim against Defendant Oliver in his official capacity – that is,

against the BOP – Mr. Chapman must allege a sufficiently serious medical need, and that

Defendants acted with deliberate indifference.  *Farmer* 511 U.S. at 834.  As explained in Section

I(A)(1), *supra*, Mr. Chapman has alleged a sufficiently serious medical need.

In addition to the deliberate indifference that Mr. Chapman has alleged Defendants

Santini, Osagie, and Camacho have demonstrated in Section I(A)(2), *supra*, Mr. Chapman has

made numerous additional allegations of deliberate indifference against the BOP.  For example,

Mr. Chapman has alleged that the BOP's chronic understaffing – under the direction of

Defendant Oliver – has harmed Mr. Chapman and put him at substantial risk of serious harm,

and yet Defendants have failed to remedy the staffing problem, despite their knowledge of the

risk of harm.  Am. Compl. ¶¶ 66-75; 160-165.  Mr. Chapman has alleged that the numerous

grievances he has filed – which Defendants have denied – have also put Defendants – including

Defendant Oliver, who is responsible for one level of the grievance response procedure – on notice of the harm and substantial risk of serious harm they have caused him.  *Id.* at ¶¶ 122, 135, 140, 145, 150.  Prisoner grievances can show that prison officials both knew of a substantial risk of harm to a plaintiff's well-being and disregarded that risk.  *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 810 (10th Cir. 1999).  Mr. Chapman has further alleged that Defendants have conceded knowledge of the seriousness of his condition – and the corresponding harm and risk of harm – by documenting it in his medical records.  Am. Compl. ¶¶ 167, 170-172.  Finally, Mr. Chapman has alleged that letters written by himself, his lawyers, and his military doctor have put Defendants – including Defendant Oliver – on notice of a substantial risk of serious harm, which they have disregarded by failing to provide him with adequate medical treatment.  *Id.* at ¶¶ 123, 136-137, 141, 146, 151, 157, 164, 173-174, 178, 181-182.  Combined with the allegations of knowledge and disregard of risk outlined in Section I(A)(2), *supra*, these additional allegations establish deliberate indifference in the context of an official capacity Eighth Amendment claim.

Because Mr. Chapman has alleged a sufficiently serious medical need – and a substantial risk of serious harm – as well as that the Defendants acted with deliberate indifference, his official capacity Eighth Amendment claim should not be dismissed.

**III.     Mr. Chapman Has Alleged a Violation of the Rehabilitation Act.**

Section 504 of the Rehabilitation Act of 1973 ("Section 504") guarantees that anyone qualified to participate in a program, service, or activity offered by a recipient of federal funds will have "meaningful access" to that program, service, or activity.  *Alexander v. Choate*, 469 U.S. 287, 300-01 (1985).  "To state a claim under the ADA (and the Rehabilitation Act) a 'plaintiff must allege that: (1) he is a qualified individual with a disability, (2) who was excluded

16

from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability.'" *Anderson v. Colo. Dep't of Corr.*, 848 F.Supp.2d 1291, 1300 (D. Colo. 2012) (quoting *Robertson v. Las Animas Cnty. Sheriff's Dep't.*, 500 F.3d 1185, 1193 (10th Cir. 2007)).  Mr. Chapman has sufficiently alleged all three of these elements.

Mr. Chapman has alleged that he "is substantially limited in his ability to care for himself, a major life activity, because of his especially severe form of Type I diabetes," Am. Compl. ¶ 18, and that he "is substantially limited in his ability to eat, a major life activity, because of his especially severe form of Type 1 diabetes." *Id.* ¶ 49.  Mr. Chapman has thus alleged that he has a disability for purposes of the Rehabilitation Act.  *See Ellenberg v. N.M. Military Inst.*, 572 F.3d 815, 820 (10th Cir. 2009).  The programs, services, and activities that Mr. Chapman alleges he has been excluded from include medical services (Am. Compl. ¶ 46); food services (*id.* ¶ 57); and recreational services (*id.* ¶ 64).  These services are covered by the Rehabilitation Act.  *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) ("Modern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')."  Mr. Chapman has further alleged that he is qualified for these programs and services because, with or without reasonable modifications, he has met and still meets the eligibility requirements for the programs and services.  Am. Compl. ¶¶ 198-99.  Finally, he has alleged that the reason Defendants have excluded him from these programs and services is because of his disability – Type 1 diabetes.

*Id.* ¶¶ 46, 57, 64.  For example, Mr. Chapman has alleged that, because of his diabetes, Defendants have denied him the ability to eat.  *Id.* ¶ 58.

Mr. Chapman has thus alleged all of the necessary elements of a claim under the Rehabilitation Act, and that claim should not be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Respectfully submitted this 13th day of July, 2015

STUDENT LAW OFFICE

*s/ Lauren Fontana*
_____
Lauren Fontana

*s/ Nicole B. Godfrey*
Nicole B. Godfrey
University of Denver Sturm College of Law
2255 E. Evans Ave., Suite 335
Denver, CO 80208
(303) 871-6780
lfontana@law.du.edu
ngodfrey@law.du.edu
*Counsel for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 13, 2015, I electronically filed the foregoing to the Clerk of Court using the CM/ECF system, and I served it via electronic mail on the following:

Zeyen Wu
zeyen.wu@usdoj.gov

Amy Padden
amy.padden@usdoj.gov

*Counsel for Defendants*

*s/ Nicole B. Godfrey*
_____
Nicole B. Godfrey