IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00279-WYD-KLM

SEIFULLAH CHAPMAN,

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS;
WARDEN JOHN OLIVER, in his official capacity;
FRANKIE CORDOVA, MD, individually and in his official capacity;
GEORGE SANTINI, MD, individually and in his official capacity;
ANTHONY OSAGIE, PA, individually and in his official capacity;
RONALD CAMACHO, PA, individually and in his official capacity,

    Defendants.

## REPLY TO RESPONSE TO DEFENDANTS' MOTION TO DISMISS

The Court should dismiss the Amended Complaint because Plaintiff makes only conclusory allegations regarding the subjective intent requirement of the Eighth Amendment and the individual Defendants are entitled to qualified immunity. Further, Plaintiff's Rehabilitation Act claims are not properly brought under that statute, but instead are simply complaints about medical treatment.[1]

**I.  Plaintiff's Arguments Relating to the Subjective Component of Deliberate Medical Indifference Claims are Conclusory and Insufficient to State a Claim.**

In general, Plaintiff's response regurgitates passages from the Amended Complaint, and concludes that his allegations are sufficient to satisfy both the objective and subjective prongs of an Eighth Amendment deliberate medical indifference claim. The response fails to explain the

---

[1] Plaintiff's Amended Complaint alleges two causes of action: (1) constitutionally deficient medical care in violation of the Eighth Amendment; and (2) disability discrimination under Section 504 of the Rehabilitation Act. Doc. 24, Am. Compl. ¶¶ 183-202 (filed May 22, 2015).

1

causal connection between Defendants' allegedly culpable states of mind, and the complained-of acts or omissions. Plaintiff's allegations about Defendants' knowledge simply relate to their knowledge that Plaintiff is a Type 1 diabetic. Pl. Resp. at 6-11. But such general allegations of knowledge of a medical condition do not translate into an intent to harm Plaintiff, or even the knowledge that a specific action or omission is likely to harm Plaintiff, unless it is so egregious that it would be "obvious" to a "layman." *Heidtke v. Corr. Corp. of Am.*, 489 F. App'x 275, 280 (10th Cir. 2012) (unpublished) (citing *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006)). As explained below, none of Plaintiff's allegations rise to that level, because they all concern disagreements with the type of medical treatment being provided to Plaintiff.

### A. Defendant Santini.

Plaintiff makes conflicting claims about Dr. Santini's treatment of Plaintiff's condition. First, Plaintiff claims that Dr. Santini provides "no actual treatment for Mr. Chapman's diabetes." Pl. Resp. at 6 (Doc. 63) (citing paragraph 44, which states in part that "Defendant Santini listens passively and does nothing to address Mr. Chapman's problems . . . ."). But the remainder of the allegations concerning Dr. Santini relate to his failure to provide *adequate* care, not that he allegedly provides *no care at all*. *Id.* at 7 ("Defendant Santini failed to assist Mr. Chapman in controlling his blood sugar by providing him with *sufficient* medication, supplies, Chronic Care appointments, and exercise." (emphasis added)). This distinction is important because it illustrates that Plaintiff's true disagreement with Dr. Santini is over the course of medical treatment for Plaintiff's diabetes, which is not a cognizable claim under the Eighth Amendment. *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006).

Even the allegation that Dr. Santini sometimes "does nothing" is insufficient to demonstrate that he was deliberately indifferent, because depending on the circumstances, there

2

may be nothing that a medical professional can do to improve treatment for a patient. The allegation that Plaintiff makes, for example, that Dr. Santini knew that Plaintiff did not receive enough out-of-cell exercise time, fails to allege what Dr. Santini should have done differently, or how this alleged knowledge demonstrates a culpable state of mind on the part of Dr. Santini. Certainly, the lack of adequate out-of-cell exercise time does not indicate a medical condition "so obvious that even a layman would recognize the condition." *Heidtke*, 489 F. App'x at 280.

Moreover, Plaintiff's recitation of various state-of-mind allegations against Dr. Santini serve only to acknowledge that Dr. Santini is a medical doctor who presumably knows about the symptoms and courses of treatment for diabetes. This knowledge alone fails to establish that Dr. Santini acted with a culpable state of mind under the relevant legal standard when providing (or allegedly failing to provide) appropriate treatment for Plaintiff. *See id.* at 281 ("Plaintiff, like the prisoner in *Self* [*v. Crum*], attempts to remove the subjective inquiry from the deliberate indifference test by suggesting that a competent doctor looking at his symptoms would have known that malunion and CRPS, in our case, were possible and taken additional steps to confirm such a diagnosis. As we discussed in *Self*, *Farmer v. Brennan* and our cases interpreting *Farmer* have made clear, a purely objective test for deliberate indifference is simply incompatible with the tenets of the Eighth Amendment.") (internal punctuation and citations omitted).

### B.  Defendant Osagie.

Similar to Dr. Santini, Plaintiff fails to establish that Defendant Osagie's state of mind was sufficiently culpable so as to have violated the Eighth Amendment. Some of the allegations relating to what Defendant Osagie knew at the time he provided treatment for Plaintiff are that Defendant Osagie knew that Plaintiff needed specialized care for his diabetes,

that he knew the standards of care for diabetes, and that he knew that Plaintiff was not being provided with "sufficient" medical supplies and doctor's appointments. These allegations, which relate to the fact that Defendant Osagie generally knew the medical standards of care for diabetes, are insufficient to establish a culpable state of mind because they fail to show that Defendant Osagie *actually knew* about and disregarded any *specific* and serious risk of harm to Plaintiff.

Plaintiff also alleges that Defendant Osagie knew that he was improperly administering insulin. Pl. Resp. at 9. However, the allegations in the Amended Complaint that purport to establish that Defendant Osagie was administering insulin inappropriately are that Plaintiff informed him that he was doing it wrong. Am. Compl. ¶¶ 118, 120, 124. Plaintiff is not a medical professional. Even if he were, the most that these allegations show is that Plaintiff disagrees with the medical care that he is being provided. The fact that Plaintiff told Defendant Osagie that he was providing inappropriate medical care is not sufficient, as a matter of law, to plead that Defendant Osagie was actually providing inappropriate medical care. Nor does it establish that Defendant Osagie knew that the care he was providing was likely to place Plaintiff at substantial risk of serious harm.

Plaintiff claims Defendant Osagie refused to coordinate Plaintiff's insulin dosage with his meals. This allegation is a variation of the allegation that Defendant Osagie knows the standards of care for diabetes. A claim that a medical professional did not act in accordance with various standards of allegedly proper medical judgment, without more, is insufficient to meet the subjective prong of an Eighth Amendment claim. *See Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) ("Our review of plaintiff's complaint shows that prison officials have recognized his serious medical condition and are treating it. Plaintiff

4

simply disagrees . . . [t]his disagreement does not give rise to a claim for deliberate indifference to serious medical needs.").

### C. Defendant Camacho.

The same allegations are made against Defendant Camacho as against Defendant Osagie relating to allegedly improper administration of insulin and Defendant Camacho's knowledge about the proper course of treatment for diabetes. Pl. Resp. at 10-11. In response, the same considerations relating to the subjective component of an Eighth Amendment claim apply to Defendant Camacho as they do to Defendant Osagie, as explained above.

The only additional allegation regarding Defendant Camacho that is not also made against Defendant Osagie is that Defendant Camacho has told Plaintiff that it is not his job to replenish Plaintiff's medical supplies. Am. Compl. ¶ 128. But this allegation is still inadequate, as it contains no dates, times, or the circumstances surrounding such a statement. Plaintiff does not allege that his medical supplies actually needed to be replenished at the time that Defendant Camacho made these alleged statements. Defendant Camacho's alleged statements do not establish that Defendant Camacho knew that Plaintiff was likely to be at a substantial risk of harm if he did not replenish Plaintiff's medical supplies.

## II.     Plaintiff Has Not Shown a Clearly Established Constitutional Right.

To show that a constitutional right is "clearly established" such that it would defeat qualified immunity, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013). "[E]xisting precedent must have placed the statutory or constitutional question *beyond debate*." *Courtney v. Okla. ex rel., Dep't of Public Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013) (citing *Ashcroft v. al-Kidd*, — U.S. —, 131 S. Ct. 2074, 2083

(2011)) (emphasis added). The precedent must be clearly established in the applicable circuit court, or clearly established in many other appellate courts. *See Panagoulakos*, 741 F.3d at 1130 (finding that the Tenth Circuit had not adopted a First Circuit decision and sister circuits had not clearly established the right at issue, and granting qualified immunity). This inquiry must be conducted under the specific factual context of the case and not as a general proposition. *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009).

Here, Plaintiff ignores that Tenth Circuit law is not settled regarding whether disagreements about the provision of diabetes care can violate the Eighth Amendment. Plaintiff cites only *Hunt v. Uphoff*, 199 F.3d 1220 (10th Cir. 1999) for the proposition that his requested form and method of diabetes care is a clearly established constitutional right in the Tenth Circuit. But *Hunt* involved far different facts – in that case, the inmate had been completely denied his prescribed insulin for over a year. *Id*. at 1223. Plaintiff fails to address the six other Tenth Circuit cases finding *no* constitutional violation when faced with claims for inadequate diabetes treatment in a correctional setting. *Losee v. Garden*, 420 F. App'x 821, 823-24 (10th Cir. 2011) (unpublished) (no § 1983 violation when the plaintiff received a glucometer and received insulin); *Beers v. Ballard*, 248 F. App'x 988, 992 (10th Cir. 2007) (unpublished) (no constitutional violation for two weeks of missed diabetes treatments); *Randall v. Bd. of Cnty. Comm'rs.*, 184 F. App'x 723, 727 (10th Cir. 2006) (unpublished); *Brown v. Prison Health Servs., El Dorado Corr. Facility*, 159 F. App'x 840, 841 (10th Cir. 2005) (unpublished) (no constitutional violation when prison officials did not know they had given the plaintiff the wrong diabetes medication); *Humphrey v. McCurtain Cnty.*, 203 F.3d 835, 2000 WL 107401, *2 (10th Cir. 2000) (unpublished) (no constitutional violation for failure to timely provide insulin or blood-sugar testing materials); *Wilson v. Sharp*, 43 F.3d 1484, 1994 WL 699162, *1 (10th Cir.

6

1994) (unpublished) (no constitutional violation for failure to regularly check blood glucose). Even taking Plaintiff's arguments relating to *Hunt* as true, the conflicting cases demonstrate that there is *a debate* about whether inadequate diabetes care violates the Eighth Amendment.  *See, e.g., Wilson*, 1994 WL 699162, at *1 ("[I]t is undisputed that he received medical care for his conditions on repeated occasions, including examinations by physicians, multiple tests of his blood pressure and blood glucose levels, and administration of prescribed medication."). Furthermore, *Hunt* is one of the oldest decisions on the issue, as *Humphrey, Brown, Randall, Beers,* and *Ballard* were all decided after *Hunt*.   In short, the issue of constitutionally adequate care for diabetes is not "beyond debate," as required for the right to be clearly established, and the individual Defendants are entitled to qualified immunity.

**III.     Plaintiff's Eighth Amendment Injunctive Relief Claim Should be Dismissed.**

Plaintiff argues that "Defendants have provided no basis at all for dismissing the official capacity claims against Defendants Santini, Osagie, and Camacho . . . ."   Pl. Resp. at 13-14. To the contrary, the motion to dismiss explains that none of the Eighth Amendment allegations against these individual Defendants states a claim.   Def. Mot. to Dismiss Am. Compl. at 6-13 (Doc. 54).   The substantive legal standard to state an "official capacity" versus an individual capacity claim for a constitutional violation is the same.   *See Farmer v. Brennan*, 511 U.S. 825, 845 (1994) ("In a suit such as petitioner's, insofar as it seeks injunctive relief to prevent a substantial risk of serious injury from ripening into actual harm, the subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct . . . ." (internal quotations omitted)).   The only difference is that qualified immunity is available as a defense to *Bivens* claims.   Therefore, the failure to state a claim for a constitutional violation under *Bivens* also fails to state a claim for injunctive relief.   But in any event, any

7

claim against the individuals in their official capacity is really a claim against the Bureau of Prisons. *See*, *e.g.*, *Simmat,* 413 F.3d at 1232 ("Although nominally brought against the prison dentists, Mr. Simmat's [official capacity] claim is in reality against the United States" (citing cases)).

Plaintiff appears to argue that an "official capacity" Eighth Amendment claim is subject to a different, and lesser, legal standard to state a claim than an Eighth Amendment claim under *Bivens*. *Farmer*, however, explains that an inmate still must satisfy the subjective prong of an Eighth Amendment claim, *even in a suit for injunctive relief*. 511 U.S. at 845-47. Plaintiff cites no authority to support the proposition that an official capacity claim is subject to a different legal standard than an individual capacity claim.

As explained above, Plaintiff has not alleged facts to show the subjective component with respect to the three individual capacity Defendants, which bars any official capacity claims based on their purported subjective intent. The same flaw bars his official capacity claim to the extent that he intends to rely on Warden Oliver's alleged subjective intent.

Here, the Amended Complaint is completely devoid of facts to establish that Warden Oliver, who is not a medical professional, had anything to do with, or even any particularized knowledge about, Plaintiff's medical care. There are no facts alleged showing that he in fact, subjectively, knew that Plaintiff was at a serious risk of harm. *See Farmer*, 511 U.S. at 843 n.8 ("[C]ourts should be careful to ensure that the requirement of subjective culpability is not lost. It is not enough merely to find that a reasonable person would have known, or that the defendant should have known. . . ."). Because there are no facts alleged that would show that Warden Oliver acted with the requisite intent to constitute deliberate medical indifference, Plaintiff's injunctive relief claim fails.

**IV.     Plaintiff's Rehabilitation Act Claims are Simply Challenges to his Medical Care**.

The parties agree on the relevant legal standard for Rehabilitation Act claims.   Pl. Resp. at 16-17.   Defendants do not dispute that Plaintiff has alleged facts to show the first two elements of Plaintiff's Rehabilitation Act claim.   However, as demonstrated in the motion to dismiss, the Amended Complaint does not allege that Plaintiff has been treated differently *because of his diabetic condition*.   Def. Mot. Dismiss Am. Compl. at 20-22.

Plaintiff's response as to this issue references four paragraphs in the Amended Complaint: 46, 57, 58, and 64.   Pl. Resp. at 18.   Defendants address each in turn:

Paragraph 46:   This allegation is conclusory and does not state a claim because it fails to explain why Plaintiff's alleged exclusion from medical services is because of diabetes.   He does not allege, for example, that Defendants have an aversion or other bias against treating diabetics, or that diabetics as a class do not receive medical treatment at the ADX.

Paragraphs 57 and 58:   These allegations fail to state a Rehabilitation Act claim because they are claims about medical care.   The coordination of insulin with meals is really about insulin delivery, not participation in food services.   Presumably, if Plaintiff's meals were better coordinated with insulin delivery, he would be able to participate in food services.   Therefore, this claim is actually about an alleged failure to treat, not about discrimination.   Plaintiff does not allege, for example, that Defendants are preventing him from eating *because* he is a diabetic.

Paragraph 64: This allegation is conclusory and fails to state a claim because Plaintiff does not allege that he does not have the same "ability to exercise" as every other inmate in the same unit as Plaintiff in the ADX.   Assuming that Plaintiff is afforded the same ability to exercise every other inmate in his unit at ADX, he is not being treated differently *because of his diabetic condition*, and therefore, fails to state a claim.   To the extent that this allegation

9

suggests that Plaintiff should receive additional opportunities to exercise than other inmates because he is a diabetic, that allegation relates to diabetes treatment, not to discrimination.

## CONCLUSION

Defendants request that Plaintiff's claims be dismissed.

Dated July 30, 2015.                                Respectfully Submitted,

                                                    JOHN F. WALSH
                                                    United States Attorney

                                                    *s/ Zeyen J. Wu*
                                                    Zeyen J. Wu
                                                    s/ *Amy L. Padden*
                                                    Amy L. Padden
                                                    Deputy Chief, Civil Division
                                                    Assistant United States Attorneys
                                                    1225 Seventeenth Street, Suite 700
                                                    Denver, Colorado 80202
                                                    Telephone: (303) 454-0100
                                                    Fax: (303) 454-0404
                                                    zeyen.wu@usdoj.gov

                                                    Attorneys for Defendants

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)**

      I hereby certify that on July 30, 2015, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the following e-mail addresses:

      lfontana@law.du.edu;
      ngodfrey@law.du.edu;
      lrovner@law.du.edu,

and I hereby certify that I will mail to the following non CM/ECF participants in the manner (mail, hand delivery, etc.) indicated by the nonparticipant's name:

      None.

                                       *s/ Zeyen J. Wu*
                                       United States Attorney's Office