IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   15-cv-00279-WYD-KLM

SEIFULLAH CHAPMAN,

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS;
WARDEN JOHN OLIVER, in his official capacity;
FRANKIE CORDOVA, MD, individually and in his official capacity;
GEORGE SANTINI, MD, individually and in his official capacity;
ANTHONY OSAGIE, PA, individually and in his official capacity;
RONALD CAMACHO, PA, individually and in his official capacity,

    Defendants.

**ORDER**

THIS MATTER comes before the Court on the following motions: (1) Defendants' Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 54), filed June 22, 2015; (2) Defendants' Motion for Partial Summary Judgment for Failure to Exhaust Rehabilitation Act Claims (ECF No. 53), filed June 22, 2015; and (3) Plaintiff's Motion for Discovery Under Rule 56(d) (ECF No. 65), filed July 13, 2015.   The pending motions are denied in part and granted in part as set forth below.

I.    <u>INTRODUCTION AND FACTUAL BACKGROUND</u>

This is a prisoner civil rights lawsuit.   Plaintiff Seifullah Chapman brings two claims against the Defendants: (1) a violation of the Eighth Amendment against Defendant Oliver in his official capacity and against Defendants Santini, Osagie, and

Camacho[1] in their individual and official capacities; and (2) a Rehabilitation Act claim against all Defendants.

The following facts are taken from Plaintiff's Amended Complaint (ECF No. 24), filed May 22, 2015 and the parties' relevant submissions.  Although much detail is provided in the Amended Complaint, I summarize the pertinent allegations.  For purposes of determination of the motion to dismiss, I treat the allegations as true.

During the relevant time period, Plaintiff was an inmate incarcerated in solitary confinement at the U.S. Penitentiary – Administrative Maximum Security Prison ("ADX") in Florence, Colorado.  Defendant John Oliver is the Warden of ADX.  Defendant George Santini, MD, is a physician employed at ADX.  Defendant Anthony Osagie, PA, and Defendant Ronald Camacho, PA, are Mid-Level Practitioners at ADX.

Plaintiff suffers from a severe form of Type I diabetes that requires specialized medical care.  (Am. Compl. ¶ 11).  Diabetes is a metabolic condition that makes it difficult to control blood sugar.  (Am. Compl. ¶ 12).  According to Bureau of Prisons ("BOP") policies and procedures and community standards of care, blood sugar control is the goal of Plaintiff's diabetes management.  Therefore, Plaintiff's blood sugar should remain between 70 and 180 milligrams per deciliter ("mg/dl").  If his blood sugar is ever outside that range, he becomes hypoglycemic, or has low blood sugar, or he becomes hyperglycemic, which means that he has high blood sugar.  When Plaintiff is hypoglycemic or hyperglycemic, he is put at substantial risk of serious future harm, including loss of consciousness, diabetic ketoacidosis, kidney failure, blindness, stroke,

---

[1] In his response to the motion to dismiss, Plaintiff concedes that Defendant Cordova is entitled to immunity; therefore, Plaintiff voluntarily dismisses all claims against Defendant Cordova.  (Resp. at 4).

heart failure, coma, and imminent death. (Am. Compl. ¶ 13).

Plaintiff claims that Defendants Osagie, Camacho, and Santini have delayed and denied him adequate medical care for his Type I diabetes. Defendants Osagie, Camacho, and Santini's actions have prevented Plaintiff from blood sugar control, and, as a result, he suffers from worsening diabetic neuropathy (a severe form of nerve damage that can lead to decreased blood flow, ulcers, chronic infections, and death), almost daily hypoglycemia (a life-threatening condition), and frequent hyperglycemia (a painful condition). (Am. Compl. ¶ 14).

Plaintiff requires proper medication, diet, and exercise to control his blood sugar. (Am. Compl. ¶ 15). Despite a prescribed, specific dosage of insulin to administer to Plaintiff in the morning and night, on multiple occasions, Defendants Osagie and Camacho have arrived at Plaintiff's cell with the wrong form or dosage of insulin. Furthermore, Defendants Osagie and Camacho often improperly administer the insulin. (Am. Compl. ¶¶ 22-28).

Despite a prescription for sufficient medical supplies including a glucometer, lancets, and test strips to check his blood sugar along with glucose gel tubes, Defendants often fail to replenish these supplies and instead of using the BOP's own supply, force Plaintiff to use his limited, personal supply, which inhibits his ability to manage his blood sugar. (Am. Compl. ¶¶ 29-40).

BOP medical staff members, including Defendant Santini, assess the effectiveness of Plaintiff's medication and other aspects of his diabetes management during Chronic Care appointments. (Am. Compl. ¶ 41). According to BOP policies and procedures, Plaintiff should receive at least quarterly Chronic Care appointments

because of his severe form of Type I diabetes, his lack of blood sugar control, and his diabetic complications. (Am. Compl. ¶ 43). At ADX, the BOP, including Defendant Santini, provides Plaintiff with at most two Chronic Care appointments a year. Furthermore, during these infrequent appointments, Defendant Santini fails to address Plaintiff's problems managing his diabetes. (Am. Compl. ¶ 44).

Plaintiff further alleges that he is substantially limited in his ability to eat, a major life activity, because of his severe form of Type I diabetes. (Am. Compl. ¶ 49). According to BOP policies and procedures and community standards of care, Plaintiff should eat a consistent amount of carbohydrates at each meal and have a means to identify the amount of carbohydrates in each food item in his meals, which is known as carbohydrate counting. Defendants, including Defendant Oliver, denied Plaintiff the ability to count his carbohydrates. (Am. Compl. ¶¶ 50-51).

According to BOP policies and procedures and community standards of care, Plaintiff must eat in accordance with a set meal time schedule. According to community standards of care, Plaintiff should receive his meals within 45 minutes of receiving his insulin. Defendants Osagie and Camacho rarely deliver insulin within 45 minutes of Plaintiff's morning or evening meal and never deliver insulin with Plaintiff's lunch. Defendants' denial of coordination between morning and evening meals and insulin and denial of insulin with lunch causes Plaintiff substantial harm and puts him at substantial risk of serious harm (hypoglycemia or hyperglycemia). (Am. Compl. ¶¶ 53-55). This denial also limits Plaintiff's ability to eat, which has substantially harmed him or puts him at a substantial risk of serious future harm, including loss of consciousness, diabetic ketoacidosis, kidney failure, blindness, stroke, heart failure, coma, and imminent death.

(Am. Compl. ¶¶ 57-58).

According to BOP policies and procedures and community standards of care, Plaintiff must exercise in order to manage his Type I diabetes, but he can only do so when his exercise is coordinated with his meals and medication. If this coordination is lacking, exercise causes Plaintiff's blood sugar to dip to a dangerously low level. BOP staff allows Plaintiff at most fourteen hours of out-of-cell exercise a week. (Am. Compl. ¶¶ 63-64).

According to BOP policies and procedures, Defendant Oliver is in charge of identifying the BOP medical staff vacancies at ADX, and understaffing of medical staff negatively impacts the quality of prisoners' medical care. Defendant Oliver's general understaffing of the BOP medical staff has led to a delay and denial of medical care to Plaintiff. (Am. Compl. ¶¶ 70-71). In June 2014, Defendant Camacho told Plaintiff that his evening delivery of insulin occurred five hours late because of limited medical staff. In August 2014, Defendant Camacho told Plaintiff that he would receive his insulin hours later than normal because of a shortage of medical technicians. (Am. Compl. ¶¶ 74-75).

Plaintiff alleges that the Defendants have denied him the ability to control his blood sugar, causing frequent bouts of hypoglycemia, which have resulted in numerous instances of neuroglycopenia and loss of consciousness. Despite Plaintiff's reliance on BOP policies and procedures which mandate that a BOP physician should be called when a person with diabetes is suffering from hypoglycemia, a BOP physician is rarely called. (Am. Compl. ¶¶ 87-99).

In addition to hypoglycemia, the delay and denial of adequate medical care caused by Defendants Osagie, Camacho, and Santini have caused Plaintiff to frequently

-5-

suffer hyperglycemia, a very painful medical condition that can lead to a life-threatening medical condition called diabetic ketoacidosis.  Plaintiff alleges that he suffers hyperglycemia multiple times a week.  However, when Plaintiff presses his emergency call button in his cell, BOP staff members fail to respond or delay their visit to Plaintiff's cell.  (Am. Compl. ¶¶ 102-114).

Plaintiff alleges that Defendants Osagie, Camacho, and Santini know that he has an especially severe form of Type I diabetes that requires daily, specialized medical care.  The BOP has classified Plaintiff as a prisoner who requires more medical attention than the typical prisoner.  Prior to Plaintiff's transfer to ADX, the BOP incarcerated him in the United States Medical Center for Federal Prisoners in Springfield, Missouri.  Plaintiff's health was in danger after BOP medical staff at United States Penitentiary in Lewisburg, Pennsylvania, removed him from insulin entirely.  Plaintiff was in custody in Springfield for over a year in order to stabilize his diabetes.  (Am. Compl. ¶¶ 108-111).  Plaintiff alleges that BOP policies and procedures mandate that persons with diabetes be able to check their blood sugar as needed.  Defendants Osagie, Camacho, and Santini either knew these policies and procedures or should have known because the substantial risk to Plaintiff was obvious.  (Am. Compl. ¶¶ 112-131).

Plaintiff alleges that Defendant Oliver, as the Warden, is responsible for staffing shortages that have harmed Plaintiff.  Plaintiff also alleges numerous administrative requests regarding inadequate medical care that were denied by the BOP.  (Am. Compl. ¶¶ 122-156).

## II. ANALYSIS

### A. Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted

Defendants seek dismissal of Plaintiff's claims for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6). Fed. R. Civ. P. 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court's inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555, 557). Furthermore, conclusory allegations are "not entitled to the assumption of truth." *Id.* at 1950.

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted).

"The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. Additionally, the Tenth Circuit has instructed that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context" and that whether a defendant receives fair notice "depends on the type of case." *Id.*

Here, the Defendants have invoked the defense of qualified immunity. Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity also offers protection from trial and other burdens of litigation. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When a defendant raises qualified immunity in a Rule 12(b)(6) motion to dismiss, the Court employs a two-step process. The threshold inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*

Courts must determine whether the constitutional right was clearly established in "the context of the particular case before the court, not as a general, abstract matter." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in each defendant's position] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Further, in order for a constitutional right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other circuits must establish the constitutional right. *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). In other words, there must be case authority in which a constitutional violation was found based upon similar conduct. *See Callahan v. Millard County*, 494 F.3d 891, 903 (10th Cir. 2007).

### 1. Statute of Limitations

As an initial matter, I address Defendants' argument that any allegations against individual Defendants that occurred prior to February 10, 2013 are barred by the statute of limitations. Actions asserted under § 1983 are subject to the general personal injury limitation period of the state in which the action arose. *Hunt v. Bennett*, 17 F.3d 1263, 1265 (10th Cir. 1994). The appropriate statute of limitations for § 1983 actions arising in Colorado is two years. *Id.* at 1266; Colo. Rev. Stat. § 13–80–102. Federal law rather than state law determines when a cause of action accrues. *See Industrial Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994). "The statute of limitations begins to run when the plaintiff knows or has reason to know of the

existence and cause of the injury which is the basis of his action." *Id.* at 969.  "A civil rights action accrues when facts that would support a cause of action are or should be apparent."  *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995).  Plaintiff does not respond to this argument.  Plaintiff filed his original Complaint on February 9, 2015. Thus, based on controlling law, I find that to the extent that the Plaintiff makes any allegations against the named Defendants that occurred prior to February 10, 2013, they are barred by the statute of limitations.

### 2. Eighth Amendment Claim

The Eighth Amendment protects against the infliction of "cruel and unusual punishments."  U.S. Const. Amend. VIII.  The Eighth Amendment's prohibition against cruel and unusual punishment encompasses deliberate indifference by prison officials. *Howard v. Waide*, 534 F.3d 1227, 1235 (10th Cir. 2008) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)).  "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  *Estelle*, 429 U.S. at 104–05 (internal citation omitted).

The elementary principles of dignity, civility, humanity, and decency "establish the government's obligation to provide medical care for those whom it is punishing by incarceration.  An inmate must rely on prison authorities to treat his medical needs; if the

-10-

authorities fail to do so, those needs will not be met.   In the worst cases, such a failure may actually produce physical torture or a lingering death, the evils of most immediate concern to the drafters of the [Eighth] Amendment.   In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose."   *Id.* at 103 (internal quotation and citation omitted).

An Eighth Amendment claim for deliberate indifference involves "a two-pronged inquiry, comprised of an objective component and a subjective component."   *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).   With respect to the objective component, a medical need is serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."   *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (internal quotation and citation omitted).   The question is not limited to whether the inmate's symptoms render a medical need sufficiently serious, but also extends to whether the potential harm to the inmate is sufficiently serious.   *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005).

Under the subjective component, the defendant must have a "sufficiently culpable state of mind."   *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citation omitted); *see also Self*, 439 F.3d at 1230–31.   In other words, the plaintiff must establish that the defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."   *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (internal citation and quotation omitted).

Unlike the objective component, the symptoms displayed by the prisoner are relevant to the subjective component of deliberate indifference.   *Mata*, 427 F.3d at 753.

With regard to the subjective component, the question for consideration by the Court is: "were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?" *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009) (quoting *Mata*, 427 F.3d at 753). "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [his] condition. Even a brief delay may be unconstitutional." *Mata*, 427 F.3d at 755; *see also Dougherty v. Kansas*, No. 08–3066, 2008 WL 2906505, at *3 (D. Kan. July 24, 2008) (unpublished) ("a delay in providing medical care does not violate the Eighth Amendment unless the plaintiff has suffered 'substantial harm' from the delay"; lifelong handicap, permanent loss, or considerable pain amounts to substantial harm). "[P]rison officials who 'actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Howard v. Waide*, 534 F.3d 1227, 1239 (10th Cir. 2008) (quoting *Farmer*, 511 U.S. at 844–45). "An official responds to a known risk in an objectively unreasonable manner if he knew of ways to reduce the harm but knowingly or recklessly declined to act." *Howard*, 534 F.3d at 1239–40 (internal citation and modification omitted).

In the motion to dismiss, while the Defendants concede that Plaintiff has adequately pleaded the objective prong of the Eight Amendment claim, they argue that Plaintiff has failed to adequately plead the subjective component of an Eighth Amendment medical indifference claim, nor is the right to a particular course of diabetic treatment clearly established. Thus, the individual Defendants are entitled to qualified immunity and the claim must be dismissed. As such, I address whether Plaintiff has

sufficiently alleged that each of the Defendants acted with deliberate indifference to his serious medical needs.

### a.   Defendant Oliver

Plaintiff brings a claim against Defendant Oliver in his official capacity, which is actually a suit against the BOP for injunctive relief.   *See Simmat v. United States Bureau of Prisons*, 413 F.3d 1225 (10th Cir. 2005).   However, in order to establish his entitlement to this form of relief, Plaintiff's Amended Complaint must include sufficient factual allegations to state a claim for an Eighth Amendment violation.   *Abu-Fakher v. Bode*, 175 Fed. Appx. 179, 181 (10th Cir. 2006).   As set forth below, I find that based on the Amended Complaint, Plaintiff can adequately state a claim for an Eighth Amendment violation.   Accordingly, he may be entitled to injunctive relief from the BOP.

### b.   Defendants Santini, Osagie, and Camacho

Plaintiff also alleges that Defendants Santini, Osagie, and Camacho violated his Eighth Amendment rights because they all knew of and disregarded a substantial risk of serious harm to Plaintiff's health.   Plaintiff's allegations against Santini include that he reduced the number of times Plaintiff could check his blood sugar throughout the day; that he has denied Plaintiff the ability to control his blood sugar; that he failed to provide Plaintiff with a sufficient number of Chronic Care appointments; and that when those appointments do happen, Santini ignores Plaintiff's needs and does not provide adequate treatment for Plaintiff's diabetes.   Plaintiff further alleges that Santini is aware of Plaintiff's diabetic condition and has discussed Plaintiff's need for specialized care with Plaintiff.   Plaintiff alleges that Santini knew or should have known that he was putting Plaintiff at a substantial risk of serious harm by denying him access to proper medication,

medical supplies, exercise, and Chronic Care appointments.   Finally, Plaintiff has alleged that even though Santini is aware of Plaintiff's frequent episodes of hyperglycemia and hypoglycemia, he has taken no action and has simply disregarded this substantial risk of serious harm to Plaintiff.

Plaintiff's allegations against Osagie include that he arbitrarily altered Plaintiff's insulin prescription and failed to correct this issue for 18 months, causing Plaintiff's health to deteriorate.   Plaintiff also alleges that Osagie has frequently arrived at Plaintiff's cell with the wrong form or dosage of insulin.   Plaintiff alleges that Osagie has improperly administered Plaintiff's insulin and failed to properly draw the insulin within the medically appropriate timeframe.   Plaintiff also alleges that Osagie has failed to provide Plaintiff with sufficient medical supplies to check and control his blood sugar and has refused to coordinate Plaintiff's insulin delivery with meals.   Plaintiff further alleges that Osagie is aware of Plaintiff's diabetic condition and has discussed Plaintiff's need for specialized care with Plaintiff.   Plaintiff alleges that Osagie knew or should have known that he was putting Plaintiff at a substantial risk of serious harm by denying him access to the appropriate amount of insulin coordinated with meal delivery, medical supplies, and exercise.   Finally, Plaintiff has alleged that even though Osagie is aware of Plaintiff's frequent episodes of hyperglycemia and hypoglycemia, he has taken no action and has simply disregarded this substantial risk of serious harm to Plaintiff.

Plaintiff's allegations against Camacho include that he frequently arrives at Plaintiff's cell with the wrong form or dosage of insulin or has delivered the insulin hours late.   Plaintiff alleges that Camacho has improperly administered Plaintiff's insulin and failed to properly draw the insulin within the medically appropriate timeframe.   Plaintiff

also alleges that Camacho has failed to provide Plaintiff with sufficient medical supplies to check and control his blood sugar and has refused to coordinate Plaintiff's insulin delivery with meals.   Plaintiff further alleges that Camacho is aware of Plaintiff's diabetic condition and has discussed Plaintiff's need for specialized care with Plaintiff.   Plaintiff alleges that Camacho knew or should have known that he was putting Plaintiff at a substantial risk of serious harm by denying him access to the appropriate amount of insulin coordinated with meal delivery, medical supplies, and exercise.   Finally, Plaintiff has alleged that even though Camacho is aware of Plaintiff's frequent episodes of hyperglycemia and hypoglycemia, he has taken no action and has simply disregarded this substantial risk of serious harm to Plaintiff.

I find that the allegations against Defendants Santini, Osagie, and Camacho are sufficient to state a claim for deliberate indifference.   These Defendants had daily interaction with Plaintiff (or met with him during Chronic Care appointments) and knew that he needed proper insulin coordinated with meals in order to manage his diabetes. They also knew that Plaintiff needed adequate medical supplies in order to check and control his blood sugar on a daily basis.   It is reasonable to infer that the Plaintiff informed the defendants of his difficulty managing his diabetes without sufficient medication, supplies, and exercise.   These allegations are sufficient to raise a plausible inference that the defendants disregarded the risk of serious harm to Plaintiff.   Accordingly, I find that Plaintiff has plausibly alleged that Defendants Santini, Osagie, and Camacho acted with deliberate indifference to his serious medical need.

Because Plaintiff has stated a plausible claim against Defendants Santini, Osagie, and Camacho, I must next consider whether the right he alleges was violated was clearly

established.  *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009).  I find that it was well settled at the time of the defendants' actions that they could not deliberately delay or deny Plaintiff treatment for his severe Type I diabetes.  *See Hunt v. Uphoff*, 199 F.3d 1220 (10th Cir. 1999).   It is clearly established that prisons officials violate the Eighth Amendment's prohibition of cruel and unusual punishment when they exhibit "deliberate indifference" to an inmate's "serious medical needs."  *Estelle*, 429 U.S. at 104; *see Garrett v. Stratman*, 254 F.3d 946, 949 (10th Cir. 2001) (holding that "[a] prison official violates an inmate's clearly established Eighth Amendment rights if he acts with deliberate indifference to an inmate's serious medical needs—if he knows of and disregards an excessive risk to inmate health or safety"); *see generally Benning v. Webster*, 2009 WL 798861, at *9 (D. Colo. March 24, 2009) (denying qualified immunity on motion to dismiss for claim of denial of pain medication); *Martin v. Sherrod*, No. 06-cv-00625-WDM-CBS, 2007 WL 1832036 (D. Colo. June 25, 2007) (citing *Estelle*, 429 U.S. at 97) (denying qualified immunity for Eighth Amendment violation for denial of medications and treatment, among other allegations, because constitutional right clearly established); *Freeman v. Knight*, No. 04-cv-00148-MSK-PAC, 2005 WL 1896245, at *5 (D. Colo. Aug. 8, 2005) (noting that the court "need not conduct an expansive review of authority to recognize that the Eighth Amendment long-ago established that a prison official's seizure of items necessary for a medically-approved treatment without regard to the inmate's health is prohibited").   Accordingly, presuming the truth of Plaintiff's allegations, I cannot find at this stage in the proceedings that Defendants Santini, Osagie, and Camacho are entitled to qualified immunity.

### 3. Rehabilitation Act Claim

In his second claim for relief, Plaintiff asserts a claim for violation of the Rehabilitation Act, 29 U.S.C. § 794. The Rehabilitation Act prohibits excluding a disabled person from a program that receives federal financial assistance solely by reason of his or her disability. 29 U.S.C. § 794. "To state a claim under the ADA (and the Rehabilitation Act) a plaintiff must allege that: (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Anderson v. Colo. Dept. of Corrections*, 848 F. Supp. 2d 1291, 1300 (D. Colo. 2012) (internal quotations and citations omitted).

Here, the parties agree that Plaintiff has alleged facts to show the first two elements of Plaintiff's Rehabilitation Act claim. However, Defendants argue that the Amended Complaint fails to allege that Plaintiff has been treated differently because of his diabetic condition. In response, Plaintiff points the Court to the following allegations:

> 46. The delay and denial of Mr. Chapman's medication caused by Defendants Osagie and Camacho have excluded and continue to exclude him from BOP medical services because of his especially severe form of Type I diabetes.
>
> 57. Defendants Osagie, Camacho, and Cordova's denial of coordination between morning and evening meals and insulin and Defendants Osagie, Camacho, and Cordova's denial of insulin with lunch substantially limit Mr. Chapman's ability to eat and have excluded and continue to exclude him from BOP food services because of his especially severe form of Type I diabetes.
>
> 58. Defendants Osagie and Camacho's delay and denial of Mr. Chapman's ability to eat have prevented him from utilizing the second key to managing diabetes, and have substantially harmed him or put him at substantial risk of serious future harm, including loss of consciousness, diabetic ketoacidosis, kidney failure, blindness, stroke, heart failure, coma, and imminent death.

-17-

> 64. Defendants' delay and denial of Mr. Chapman's ability to exercise have excluded and continue to exclude him from BOP recreational services because of his especially severe form of Type I diabetes.

(Am. Compl. at 10-14). Taking the allegations as true, I agree with Defendants that they fail to state that Plaintiff was denied medical care, food services, or exercise because he has Type I diabetes. As to paragraph 46, I find that this allegation states in conclusory fashion that Plaintiff was denied medical care but fails to explain why Plaintiff's exclusion from BOP medical services was due to his diabetic condition. As to paragraphs 57 and 58, I find that these allegations relate to inadequate medical care and how the Defendants have failed to coordinate Plaintiff's insulin delivery with his meals, which causes difficulty in controlling blood sugar. There is no allegation that Plaintiff is being refused Food Services or being prevented from eating because he is diabetic. Finally, as to paragraph 64, this allegation is conclusory and fails to state that Plaintiff, unlike other inmates, is being denied the opportunity to exercise because he is diabetic. The "Rehabilitation Act afford[s] disabled persons legal rights regarding access to program and activities enjoyed by all, but do[es] not provide them with a general federal cause of action for challenging medical treatment of their underlying disabilities." *Carrion v.* Wilkinson, 309 F. Supp. 2d 1007, 1016 (N.D. Ohio 2004). Accordingly, I find that Plaintiff's Amended Complaint does not contain sufficient factual matter to state a Rehabilitation Act claim that is plausible on its face. *See Iqbal*, 129 S. Ct. at 1949. Thus, this claim is dismissed.

III. <u>CONCLUSION</u>

Based on the foregoing, it is

ORDERED that Defendants' Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 54) is **GRANTED IN PART AND DENIED IN PART.**

The motion is granted to the extent that Plaintiff's Rehabilitation Act Claim is **DISMISSED** for failure to state a claim.   The motion is denied in all other respects.   It is

FURTHER ORDERED that Defendant Cordova is **DISMISSED** from this action as set forth in this Order.   The Clerk of the Court shall amend the case caption to reflect this dismissal.   It is

FURTHER ORDERED that in light of my ruling dismissing Plaintiff's Rehabilitation Act Claim, Defendants' Motion for Partial Summary Judgment for Failure to Exhaust Rehabilitation Act Claim (ECF No. 53) and Plaintiff's Motion for Discovery Under Rule 56(d) (ECF No. 65) are **DENIED AS MOOT**.

Dated:  December 4, 2015

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge