IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00279-DDD-KLM

SEIFULLAH CHAPMAN,

Plaintiff,

v.

GEORGE SANTINI, MD, in his individual capacity;
ANTHONY OSAGIE, PA, in his individual capacity; and
RONALD CAMACHO, PA, in his individual capacity,

Defendants.

_____

**PLAINTIFF'S SUPPLEMENTAL BRIEF**
_____

Pursuant to the Court's January 7, 2022, Order, Plaintiff Seifullah Chapman submits this supplemental brief on two issues regarding his proposed expert testimony. Doc. 499 at 4.

**INTRODUCTION**

Mr. Chapman has offered the opinions of two experts in support of his claim that Defendants violated his Eighth Amendment right to adequate medical care for his severe Type 1 diabetes: Dr. Louis Philipson, an endocrinologist, and Dr. Fred Ovsiew, a neuropsychiatrist. *See, e.g.*, Docs. 229-13, 468-1, 468-2. In addition to his expert report, Dr. Philipson submitted a rebuttal report (Doc. 453-9), sat for a deposition, and gave several declarations regarding Mr. Chapman's medical care, including opinions about the harm Mr. Chapman suffered as well as the risks of future harm. *See, e.g.,* Docs. 26-2; 89-1; 90-1; 92-2; 229-16; 311-11; 312-7; 322-7; 379-22; 452-8; 457-8.

Defendants seek to exclude "[a]ll testimony speculating about brain injury, including purported risk of future injury." Doc. 469 at 1. The relevant opinions offered by Mr. Chapman's experts can be categorized in three ways:

(1) opinions as to whether Mr. Chapman has a current brain injury (Doc. 379-22 at ¶ 6);

(2) opinions as to whether Mr. Chapman has experienced cognitive decline (Doc. 457-8 at ¶ 39); and

(3) opinions as to the risk of brain injury and cognitive decline.

The third category of opinions can be further divided into two relevant subcomponents:

(a) whether Mr. Chapman was at risk of immediate brain injury or cognitive decline during each hypoglycemic event he experienced while in Defendants' care (Doc. 229-13 at ¶ 13, 61-62, 84); and

(b) whether Mr. Chapman remains at risk of future brain injury and cognitive decline because of the cumulative effects of the frequent and severe fluctuations in blood sugar he suffered in Defendants' care (Doc. 457-8 at ¶ 37-38; Doc. 229 at ¶ 14, 61, 64).

Mr. Chapman has stipulated that he would not introduce expert opinions as to Category (1) at trial, Docs. 466 at 1-2; 499 at 2, and he no longer intends to offer evidence as to Category (2). He does intend to offer opinions as to both subcomponents of Category (3) at trial. Such opinions are relevant, admissible, and reliable, as outlined below.

**ARGUMENT**

In its Order, the Court requested that Mr. Chapman explain how he proposed to use and justify testimony regarding risk of brain injury now or in the future and why proposed testimony regarding decline in cognitive functioning is admissible. As explained above, Mr. Chapman does

2

not intend to offer expert testimony at trial about whether he has experienced cognitive decline, but he does intend to offer testimony as to how he was at risk of both brain injury and cognitive decline during each hypoglycemic event he experienced while in Defendants' care. He also intends to offer evidence that he remains at future risk of brain injury and cognitive decline because of the cumulative effects of his frequent and severe fluctuations of his blood sugar. Mr. Chapman explains the relevance and admissibility of these opinions below, but before he does so, he explains the distinction between brain injury and cognitive decline, which is necessary to understand Dr. Philipson's opinions.

## I. The distinction between cognitive decline and brain injury is best understood using the plain English meaning of these terms.

Cognition is thinking and awareness.[1] Injury is tissue or cellular damage.[2] Brain injury can cause cognitive issues, and cognitive decline can result from brain injury that is undetectable under current imaging methods and only detectable in post-mortem studies.[3] For purposes of Dr. Philipson's proffered testimony about the risks associated with incidents of hypoglycemia and the frequent and severe fluctuations in blood sugar suffered by Mr. Chapman, the distinction between the two is not relevant.

---

[1] *See*, *e.g.*, *Cognition, Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/cognition (last visited Jan. 21, 2022); *Cognitive, Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/cognitive (last visited Jan. 21, 2022).

[2] *See*, *e.g.*, *Injury, Merriam-Webster.com* https://www.merriam-webster.com/dictionary/injury (last visited Jan. 21, 2022); Effective Health Care (EHC) Program, Wounds and Injuries, https://effectivehealthcare.ahrq.gov/health-topics/wounds-and-injuries.

[3] *Subjective Cognitive Decline — A Public Health Issue*, Centers for Disease Control and Prevention, https://www.cdc.gov/aging/data/subjective-cognitive-decline-brief.html; *Brain Injury Overview*, Brain Injury Association of America of America, https://www.biausa.org/brain-injury/about-brain-injury/basics/overview

3

## II. Dr. Philipson's opinions as to Category (3) are relevant, probative, reliable, and admissible.

At trial, Dr. Philipson will testify to the immediate risk of brain injury and cognitive decline Mr. Chapman faced during severe episodes of hypoglycemia while at ADX. Doc. 457-8 ¶¶ 37-38, 40 (Category (3)(a)). Dr. Philipson will also testify that Mr. Chapman remains at risk of future brain injury and cognitive decline because of the cumulative effects of the frequent and severe fluctuations in blood sugar he suffered. *See, e.g.,* Doc. 457-8 at ¶¶ 36-38, 41-43 (Category (3)(b)).

### A. Dr. Philipson's testimony as to Category (3) is relevant to and probative of Eighth Amendment liability.

Dr. Philipson's testimony is relevant and probative to the jury's analysis of Defendants' liability. Specifically, his testimony will inform the objective element of Mr. Chapman's Eighth Amendment claim, which can be satisfied by demonstrating that Defendants' conduct exposed Mr. Chapman to an unreasonable risk of serious damage to his future health. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). In *Helling*, petitioner McKinney brought an Eighth Amendment claim based on the future risk presented by exposure to environmental tobacco smoke. *Helling*, 509 U.S. at 32-33. McKinney's cellmate exposed McKinney to second-hand smoke, "a condition of confinement that is sure or very likely to cause serious illness and needless suffering...." *Id*. at 33. Like the Defendants here, the defendants in *Helling* labeled the risk of harm "speculative." *Id*. at 34. The Supreme Court disagreed and rejected the notion that only deliberate indifference to a current risk of harm is actionable. *Id*. Under a *Helling* analysis, the opinions Dr. Philipson will offer relate directly to the analysis outlined above and Defendants' Eighth Amendment liability. *See also Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th Cir. 2001) (citing *Helling* to affirm that the Eighth Amendment extends to future risks of harm).

Expert testimony must be relevant to the task at hand and sufficiently tied to the facts of the case to help the jury understand the evidence. *Gallegos v. Swift*, 237 F.R.D. 633, 639 (D. Colo. 2006); Fed. R. Evid. 702(a). Although Mr. Chapman has stipulated that he will not offer testimony to prove that he suffered a brain injury, Dr. Philipson's opinions as to Category (3) remain relevant to the objective element of an Eighth Amendment analysis. The testimony is probative of the fact that Defendants subjected Mr. Chapman to an unreasonable risk of immediate and future harm. *Helling,* 509 U.S. at 34.

Dr. Philipson will testify that, when Mr. Chapman was entrusted to Defendants' care at ADX and his blood glucose fell below 30 mg/dL, he was at immediate risk of suffering brain damage or cognitive impairment. Doc. 229-13 at ¶¶ 12-14. That Mr. Chapman did not suffer immediate brain damage does not preclude the testimony's relevancy or probative value; an Eighth Amendment violation exists even without demonstrating that the at-risk injury came to pass. *Benefield*, 214 F.3d at 1272.

Dr. Philipson will also testify that Mr. Chapman remains at risk of future brain injury and cognitive impairment because of the cumulative effect of the recurrent episodes of hypoglycemia he suffered at ADX. Dr. Philipson's proffered testimony is relevant to whether Defendants' conduct put Mr. Chapman at substantial risk of serious future harm. *Helling*, 509 U.S. at 32-33.

Dr. Philipson's opinions are relevant to and probative of the fact that Defendants subjected Mr. Chapman to a substantial risk of serious immediate *and* future harm. Dr. Philipson will opine about those risks, and the jury should be allowed to consider both the immediate and future risks

5

presented by Defendants' deliberate indifference. Mr. Chapman should be permitted to offer this expert testimony because it relates to the objective element of the Eighth Amendment.[4]

**B. Dr. Philipson's testimony as to Category (3) is reliable and admissible.**

Dr. Philipson's testimony is reliable and admissible because it is based on sufficient facts and data. To testify at trial, an expert's opinions must be based on reliable scientific methods. Fed. R. Evid. 702(c). When it comes to reliable scientific methods, "widespread acceptance can be an important factor in ruling particular evidence admissible." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 594 (1993). Principally, Dr. Philipson is an expert in Type 1 diabetes, including hypoglycemia and the effects of hypoglycemia. **Exhibit 1,** Philipson Dep. at 33:9-18. Throughout this case, Dr. Philipson has offered opinions relating to the entirety of Mr. Chapman's diabetes care, and he has frequently opined about the risks of brain injury Mr. Chapman faced when he experienced severe fluctuations in his blood sugar or during episodes of severe hypoglycemia or repeated hypoglycemia. *See, e.g.,* Doc. 457-8 ¶ 37 ("Were Mr. Chapman to lose consciousness from low blood sugar and not be given glucose, he is at substantial risk of coma, brain damage, and/or death."); Doc. 379-22 ¶ 9 ("Each time Mr. Chapman's blood sugar falls below 40 mg/dL he has an increased risk of developing dementia..."). The opinions set forth in his report, declarations, and deposition are supported by the scientific facts and data that demonstrate the risks of future brain injury and cognitive decline.

First, he bases his opinions as to Category 3(a) on the scientific consensus that a person's life is in danger when their blood sugar falls below 30 mg/dL, that a person is at serious risk of

---

[4] Of course, the jury may consider Dr. Philipson's opinions related to Category 3(b) in its calculation of damages, but Mr. Chapman's initial purpose in offering this testimony is to establish Defendants' liability.

suffering "brain damage, loss of consciousness, seizure, and death," and if left untreated, the person suffering from hypoglycemia is at serious risk of future harm. Doc. 229-13 at ¶ 13. Further, Dr. Philipson notes that recurrent episodes of severe hypoglycemia are "spectacularly outside the community standards of care for Type 1 diabetes" and that "[o]ne event would be cause for alarm" but "[m]onthly events suggest near-misses are frequent." Doc. 229-16 at ¶ 19.

Relying on community standards of care and Mr. Chapman's daily blood sugar logs, Dr. Philipson opines that Mr. Chapman's hypoglycemia went untreated for long periods because he blacked out on at least four occasions. Doc. 26-2 at ¶ 19. Those low blood sugar readings plus the established risks associated with hypoglycemia are sufficient factual bases for Dr. Philipson to opine about the substantial risk of brain injury to Mr. Chapman each time he experienced an episode of extreme hypoglycemia.

Even without a brain injury diagnosis, it is still well-established that Defendants' actions put Mr. Chapman at risk of developing a brain injury immediately during episodes of hypoglycemia and in the future due to the cumulative effect of his hypoglycemic episodes. Doc. 453-8 ¶ 13-14, 61-62, 84. Related to Category 3(b), Dr. Philipson opines that "repeated severe hypoglycemic episodes are related to decreased cognitive functioning." Doc. 457-8 at ¶ 38. In that way, the frequent and severe fluctuations in Mr. Chapman's blood sugar compounded Mr. Chapman's risk and put him at future risk. *See, e.g.*, **Ex. 1** at 89:1-4 ("[R]epeated episodes or some extreme levels of both [hypoglycemia and hyperglycemia] could be life-threatening.").

This testimony is also based on sufficient facts and data. Dr. Philipson uses the facts and data from multiple conversations with Mr. Chapman regarding his Type 1 Diabetes, Mr. Chapman's medical history and personal logs documenting blood glucose and insulin intake, and numerous BEMR records. Doc. 229-13 at ¶¶ 7, 9. Dr. Philipson can rely on these records and data

to opine on Mr. Chapman's risk for cognitive impairment. Fed. R. Evid. 702(b). Dr. Philipson further considered Mr. Chapman's reports of memory loss and repeated severe episodes of hypoglycemia in forming his opinions. Doc. 457-8 at ¶ 38.

Dr. Philipson's opinions as to Category 3(b) are also based on reliable scientific methods. In his declaration, Dr. Philipson relies on four articles, two of which support his opinion that "repeated severe hypoglycemic episodes are related to decreased cognitive functioning." Doc. 457-8 at ¶ 38; **Exhibit 2**, E. McNay & V. Cotero, *Mini-review: Impact of recurrent hypoglycemia on cognitive and brain function*, PHYSIOL. BEHAV. 2010 Jun 1; 100(d): 234-238; **Exhibit 3**, J. Miranda Rosenthal, et al., *The Effect of Acute Hypoglycemia on Brain Function and Activation*, J. CLIN. INVEST. 2001 Apr 2: 117(4): 868-870. These articles employ reliable scientific methods to evaluate how repeated hypoglycemia causes cognitive decline. For example, the McNay article posits that recurrent hypoglycemia causes brain adaptations that pose significant threats during future hypoglycemic episodes. **Ex. 2** at 234-38. The article also indicates that a history of recurrent hypoglycemia correlates with cognitive challenges and difficulties with tasks. *Id*. at 235-36. Someone who has a history of recurrent hypoglycemia, like Mr. Chapman, may have difficulty performing complex life tasks such as driving, depending on their glycemic state. *Id*. Where Mr. Chapman may not have had difficulty performing complex tasks while mildly hypoglycemic before his incarceration, he may now, or in the future, have difficulty performing complex life tasks because of the recurrent hypoglycemia Defendants subjected him to while he was incarcerated at ADX. *Id.* The McNay article also clearly demonstrates the relationship between repeated hypoglycemia and the hippocampus, the part of the brain that controls spatial memory and memory in general. *Id*. at 235. Furthermore, the McNay article demonstrates the relationship between recurrent hypoglycemia and decreased cognitive functioning.

Dr. Philipson's proposed testimony as to Category (3) is rooted in the known risks associated with hypoglycemia and frequent and extreme fluctuations in blood sugar. **Ex. 1** at 12:3-25 (noting reliance on standards and publications regarding Type 1 diabetes in forming opinions). Accordingly, Dr. Philipson's opinions as to Category (3) are based on reliable scientific principles and are admissible.

## CONCLUSION

Dr. Philipson's proposed testimony as to Category (3), described above, is admissible under Federal Rule of Evidence 702, *Daubert* standards, and precedent in this circuit. The proposed expert testimony is based on sufficient facts and data, is the result of reliable methods and principles reliably applied to the facts of this case. Fed. R. Evid. 702(b)-(d). For these reasons, the Court should deny Defendants' Motion to Exclude Expert Testimony regarding opinions that fall within Category (3).

Respectfully submitted,

STUDENT LAW OFFICE

*s/Katie Scruggs*
Katie Scruggs

*s/Tempest Cantrell*
Tempest Cantrell

*s/Chris Nafekh*
Chris Nafekh

*s/ Laura L. Rovner*
Laura L. Rovner
Nicole B. Godfrey
Aurora L. Randolph
University of Denver Sturm College of Law
2255 East Evans Ave., Ste. 335
Denver, CO 80208
Phone: (303) 871-6441
Email: lrovner@law.du.edu

*Counsel for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*s/ Laura L. Rovner*
Laura L. Rovner

# CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on January 21, 2022, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the following e-mail addresses:


Kyle Brenton
Kyle.brenton@usdoj.gov

Susan Prose
Susan.prose@usdoj.gov

David Moskowitz
David.moskowitz@usdoj.gov

Zeyen Wu
Zeyen.wu@usdoj.gov

                                                *s/ Laura L. Rovner*
                                                Laura L. Rovner